UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CSX TRANSPORTATION, INC.,
et al.,

        Plaintiffs,

                                  Civil Action No. 12-CV-11060

vs.                                 HON. MARK A. GOLDSMITH

FRANK DENARDO, JR., et al.,

        Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS (DKT. 18),
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 23), AND
STAYING THIS ACTION FOR 60 DAYS**

## I.      INTRODUCTION

Plaintiffs CSX Transportation, Inc. ("CSX") and Norfolk Southern Railway Co. ("Norfolk") bring claims of fraudulent transfers and unlawful distributions allegedly made by their judgment debtor, Hog Brothers Recycling, LLC ("Hog Brothers"), to Defendants. Before the Court are Defendants' motion to dismiss the amended complaint (Dkt. 18) and motion for summary judgment (Dkt. 23). Having reviewed the briefs and conducted a hearing, the Court denies both motions.

## II.      BACKGROUND

Defendants Frank Denardo, Jr., Clifford Winter, and Douglas Dauer were members of Hog Brothers; Defendant Patricia Winter is married to Clifford Winter. Am. Compl. ¶ 9 (Dkt. 14). Hog Brothers is currently inactive, but was in the business of purchasing, processing, and selling scrap metal. Id. ¶ 10. Plaintiffs allege that in 2008 and 2009, Hog Brothers incurred (i)

1

$517,303.65 in debt to CSX for freight charges and purchase of scrap rail cars, id. ¶¶ 12, 13; and (ii) $104,780.44 in debt to Norfolk for freight charges.  Id. ¶ 11.

To recover these charges, CSX and Norfolk filed separate suits against Hog Brothers in this Court, resulting in default judgments: (i) for CSX for $481,343.65 (in Case No. 09-13626, entered by Judge David M. Lawson on March 23, 2011), and (ii) for Norfolk for $108,560.42 (in Case No. 09-11434, entered by Judge Robert H. Cleland on September 30, 2009).

On March 18, 2010, Hog Brothers filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Michigan.  Am. Compl. ¶ 17.  On July 9, 2010, the Bankruptcy Court entered an order authorizing the sale of substantially all of the assets of Hog Brothers to Fort Iron and Metal Company ("Fort Iron").  Asset Sale Order at 2 of 6 (CMECF pagination), Dkt. 77 to Bankruptcy Case No. 10-48733 (attached as Ex. A to Def. Mot. to Dismiss, Dkt. 18-1). Following the sale, the bankruptcy case was closed. Order of Dismissal, Dkt. 93 to Bankruptcy Case No. 10-48733 (Ex. B to Def. Mot. to Dismiss, Dk. 18-2); Decree Closing the Bankruptcy Case, entered on October 25, 2010 in Bankruptcy Court Docket for Case No. 10-48733 (Ex. A to Pl. Resp. to Mot. to Dismiss at 12 of 15 (CMECF pagination), Dkt. 21-1).  No reorganization plan was apparently filed or approved.  Bankruptcy Court Docket for Case No. 10-48733 (Ex. A to Pl. Resp. to Mot. to Dismiss, Dkt. 21-1).

After entry of the default judgments against Hog Brothers, Plaintiffs engaged in discovery to trace the assets of Hog Brothers, culminating in the assertion in this action of claims for fraudulent transfers and unlawful distributions, in violation Mich. Comp. Laws § 566.31 and Mich. Comp. Laws § 450.4307.   Am. Compl.  (Dkt. 14).  Plaintiffs allege in the amended complaint that Defendants attempted to conceal their personal liability by, among other things, (i) "[f]ailing to disclose the existence of any causes of action against the Members of Hog

2

Brothers on the Chapter 11 Petition filed in the United States Bankruptcy Court for the Eastern District of Michigan," Am. Compl. ¶ 20(a); and (ii) "[d]isclosing the existence of only $12,000.00 dollars [sic] worth of payments to the Members of Hog Brothers on Hog Brothers' bankruptcy petition." Id. ¶ 20(b).

Plaintiffs further allege that in 2007 and 2008, Hog Brothers defaulted on a loan to Citizens Bank and engaged in liquidation, at which point Hog Brothers' liabilities exceeded its assets. Id. ¶¶ 22-29. Plaintiffs allege that while Hog Brothers was insolvent in 2008 and 2009, it made cash distributions to Defendants; the total amount of these cash distributions was between one and two million dollars. Id. ¶¶ 30, 31. Plaintiffs further allege that these transfers were made with the actual and presumed intent to defraud Plaintiffs. Id. ¶¶ 32, 33. Plaintiffs also allege that Defendant Patricia Winters received distributions from Hog Brothers, and that Winters was not a good-faith transferee. Id. ¶¶ 35-41.

### III. ANALYSIS

#### A.  Defendants' Joint Motion to Dismiss (Dkt. 18)

##### 1.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim upon which relief may be granted, a complaint must plead sufficient specific factual allegations, and not just legal conclusions, in support of each claim. Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009). A complaint will be dismissed unless, when all well-pled factual allegations are accepted as true, the complaint states a "plausible claim for relief." Id. at 679. In ruling on a motion to dismiss, the Court may consider the entire complaint, documents incorporated by reference in the complaint and central to the claims, and matters on which a

3

court may take judicial notice.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  Materials on which a court may take judicial notice include public records.  New England Health Care Emps. Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003) (abrogated on other grounds by Merck & Co, Inc. v. Reynolds, 130 S. Ct. 1784 (2010)).

### 2. Parties' Arguments

Defendants contend that Plaintiffs do not have standing to proceed with their complaint. Def. Mot. to Dismiss at 5 (Dkt. 18).  Defendants argue that upon the sale of all of Hog Brothers' assets and the closing of the bankruptcy case, Hog Brothers had sold its right to bring the claims to Fort Iron.  Id. at 5-6.  Defendants further argue that Plaintiffs' claims are moot because, if the allegedly improper distributions were refunded, they would have to be refunded to Fort Iron, and Plaintiffs therefore have no possibility of recovery.  Id. at 6-7.

Plaintiffs argue in response that they have standing to bring their claims, reasoning that because Hog Brothers "did not disclose any causes of action as assets of the debtor, . . . those causes of action were not sold to Fort Iron," thereby allowing Plaintiffs to regain standing upon the closing of the bankruptcy case.  Pl. Resp. at 10-11 (Dkt. 21).  Plaintiffs also argue that they seek for Defendants to refund the alleged unlawful distributions to Hog Brothers, so that Hog Brothers can repay Plaintiffs.  Id. at 11.  Finally, Plaintiffs contend that Defendants' standing argument is barred by issue preclusion.  Id. at 12-13.

In reply, Defendants argue that Plaintiffs may not now attempt a collateral attack on the bankruptcy asset sale.  Def. Rep. Br. at 2 (Dkt. 22).  Defendants also argue that issue preclusion does not bar Defendants' standing argument because the elements of issue preclusion are not met.  Id. at 4-5.

### 3. Discussion

4

**a.  Effect of bankruptcy proceedings on Plaintiffs' standing**

It is established that during the pendency of a bankruptcy proceeding, claims that could have been brought by the debtor become property of the debtor's estate and may only be brought by the trustee of the estate.  As the Sixth Circuit explained in In re Van Dresser Corp., 128 F.3d 945, 947 (6th Cir. 1997):

> Property of a debtor's estate includes all legal or equitable interests of the debtor in property as of the commencement of the case . . . . And it is well established that the interests of the debtor in property include causes of action.  A debtor's appointed trustee has the exclusive right to assert the debtor's claim.

(citations and quotation marks omitted, emphasis in original).  See also 11 U.S.C. § 548(a) (establishing that the trustee may avoid fraudulent transfers of the debtor's property, and may avoid distributions of the property while the debtor is insolvent).  Furthermore, Hog Brothers, as a Chapter 11 debtor in possession, had the rights and duties of a trustee; therefore, during the bankruptcy proceeding, it was the proper party to bring fraudulent transfer and unlawful distribution claims.  See 11 U.S.C. § 1107(a).  The parties do not dispute this.  The issue before the Court is whether Plaintiffs have the right to bring these claims at this point, now that the asset sale has occurred and the bankruptcy case is closed.

"A debtor has an affirmative duty to disclose all of its assets to the bankruptcy court." Browning v. Levy, 283 F.3d 761, 775 (6th Cir. 2002) (citing 11 U.S.C. § 521).  Disclosure is accomplished through the debtor's filing of schedules. 11 U.S.C. § 521(a); Cannata v. Wyndham Worldwide Corp., 798 F. Supp. 2d 1165, 1173 (D. Nev. 2011) ("The information provided on bankruptcy schedules informs the actions creditors plan to take during the bankruptcy proceeding . . .").

"It is well settled that causes of action are among the assets that must be disclosed on a debtor's schedules."  In re Johnson, 345 B.R. 816, 822 (Bankr. W.D. Mich. 2006) (citation

omitted).  Furthermore, a debtor is under a continuing duty to disclose all potential claims.  See In re Coastal Plains, Inc., 179 F.3d 197, 208 (5th Cir. 1999) ("The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . to suggest that it may have a possible cause of action, then that is a known cause of action such that it must be disclosed.") (citations and quotation marks omitted).

The Court concludes that the amended complaint has made sufficient allegations of fact that Hog Brothers knew of the basis for the fraudulent transfer and unlawful distribution claims at the time its schedules were filed.  The complaint alleges that, during the bankruptcy proceeding, Hog Brothers failed to disclose the existence of any claims for transfers to Defendants, and disclosed only $12,000 worth of payments to the members of Hog Brothers, even though between 1 and 2 million dollars were transferred from Hog Brothers to Defendants during 2008 and 2009.  The Court concludes that these alleged facts are sufficient to establish, at this point in the proceedings, that Hog Brothers was required to disclose the fraudulent conveyance and unlawful distribution claims.

Applicable statutes and case law support the proposition that undisclosed assets, not administered as part of the bankruptcy proceedings, remain property of the debtor's estate. "[A]ny property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title."  11 U.S.C. § 554(c).  However, "property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."  11 U.S.C. § 554(d).

As a bankruptcy appellate panel of the Sixth Circuit has explained:

Many courts have held that "when the debtor has failed to disclose an asset in accordance with § 521(1) of the Code and the Trustee has not otherwise

6

administered it, the asset is not, upon the closing of the case, deemed abandoned or administered for purposes of § 350, as it would be if the asset were properly disclosed." <u>Dwyer v. Peebles</u> (<u>In re Peebles</u>), 224 B.R. 519 (Bankr. D. Mass. 1998) (citing 11 U.S.C. § 554(c)). <u>See also</u> <u>In re</u> <u>Auto West, Inc.</u>, 43 B.R. 761, 763 (D.Utah 1984) ("[U]nlisted assets are not deemed abandoned."); <u>In re</u> <u>Benefield</u>, 102 B.R. 157, 159 (Bankr. E.D. Ark.1989) ("[T]he property in question was never scheduled and, therefore, it remained property of the estate after the case was closed.").

<u>In re Cundiff</u>, 227 B.R. 476, 478-479 (B.A.P. 6th Cir. 1998).

The Court concludes that because the claims at issue were not disclosed, they were not formally abandoned and remained property of Hog Brothers' estate. <u>See</u> <u>Jeffrey v. Desmond</u>, 70 F.3d 183, 186 (1st Cir. 1995) (concluding that a claim was not abandoned because "[t]he state court action was not scheduled as an asset at any time during the bankruptcy proceedings. There is simply no such concept of 'assumed abandonment'"); <u>In re Brokaw</u>, 452 B.R. 770, 774 (Bankr. E.D. Mo. 2011) ("[In] order for Trustee to abandon any interest in property by operation of law – due to Trustee's failure to administer – the property must first be disclosed on Debtor's schedules").

The Court therefore turns to the issue of how to address undisclosed assets that are discovered after the bankruptcy case has been dismissed. Many cases suggest that the bankruptcy proceedings may be reopened to administer the assets. One bankruptcy court explained:

> Reading [11 U.S.C. § 554] subsection (c) and subsection (d) together, it is clear that an asset that is not listed in a debtor's schedules or otherwise disclosed and administered remains property of the estate. It is not abandoned when the case is closed. There is a statutorily explicit distinction between cases in which property is not listed in the Bankruptcy Schedules but is disclosed and administered (as in the <u>Superior Crewboats</u> case discussed below) and the instant case in which property was not disclosed and was not administered.
>
> It is not serendipitous that the Bankruptcy Code has an explicit provision that prevents the loss of assets that a debtor fails to disclose in Bankruptcy Schedules. It happens all the time, especially with claims. And when it does, cases are

> routinely reopened, in accordance with the statute, to administer those assets. It
> would be truly unjust, and a source of endless mischief, if a debtor could deny to
> the trustee the right to pursue assets merely by failing to list the assets in
> Bankruptcy Schedules.

In re Miller, 347 B.R. 48, 53-54 (Bankr. S. D. Tex. 2006) (footnote omitted).  See also 11 U.S.C.

§ 350(b) ("A case may be reopened in the court in which such case was closed to administer

assets, to accord relief to the debtor, or for other cause.").

Although In re Miller was a Chapter 7 bankruptcy case, there is also precedent for

reopening Chapter 11 bankruptcy cases, although the differences between Chapter 7 and Chapter

11 cases may alter the analysis on a motion to reopen.  In In re Coastline Care, Inc., 299 B.R.

373, 377 (Bankr. E.D.N.C. 2003), the court considered whether to grant a petition to reopen the

Chapter 11 case:

> [A] motion to reopen can be filed at any time.  The Fourth Circuit Court of
> Appeals has held that the decision to reopen a case is committed to the "sound
> discretion" of the bankruptcy court and must depend "upon the circumstances of
> the case."
> . . . .
> This motion [to reopen] should be granted if it is still possible to grant substantive
> relief in the case by administering these [previously undisclosed] assets for the
> benefit of the debtor's creditors, but should be denied if it is not.
> . . . .
> [P]roperty of the estate that was concealed or unknown, and thus not scheduled,
> remains property of the estate after the case is closed.
>
> It is difficult to imagine a situation in which a chapter 7 case, which involves the
> trustee's liquidation and distribution of property of the estate, would not be
> reopened to permit the administration of newly discovered property of the estate.
> See, e.g., In re Suplinskas, 252 B.R. 293 (Bankr. D. Conn. 2000); Tavormina v.
> Harris (In re Harris), 32 B.R. 125 (Bankr. S. D. Fla. 1983).
>
> Chapter 11, on the other hand, is typically used for complex reorganizations and
> thus effectuates different policies than chapters 7 and 13. As a result, certain
> aspects of the bankruptcy process work very differently in chapter 11 than in
> other chapters. Cf. In re Regional Building Systems, Inc., 254 F.3d 528 (4th Cir.
> 2001) (holding that the confirmation of a chapter 11 plan can extinguish a
> creditor's lien, although a chapter 13 plan cannot have this effect). The

8

Bankruptcy Code follows this pattern by treating concealed and newly discovered assets differently in chapter 11 than in chapters 7 and 13.

Because the court concluded that the confirmed plan of reorganization was binding and could not be modified or revoked, id. at 379-380, the court denied the motion to reopen. Id.

However, in the instant case, there does not appear to be a confirmed plan of reorganization. Instead, the bankruptcy case was dismissed when the Bankruptcy Court issued an order approving the sale of the remaining assets in Hog Brothers' estate. Ex. B. to Def. Mot. to Dismiss (Dkt. 18-2). Because there is no confirmed plan of reorganization, there does not seem to be a barrier to reopening the case to administer undisclosed assets.

Furthermore, based on the facts alleged, Plaintiffs may be able to show that there is a likelihood of substantial recovery for the estate or benefit to the creditors. See In re Upshur, 317 B.R. 446, 450 (Bankr. N.D. Ga. 2004) ("[W]hen the purpose of the motion to reopen is to add an undisclosed asset, the most important consideration is the benefit to the creditors."); In re Lopez, 283 B.R. 22, 27 (B.A.P. 9th Cir. 2002) ("[I]t is an abuse of discretion to deny a motion to reopen where assets of such probability, administrability, and substance appear to exist as to make it unreasonable under all the circumstances for the court not to deal with them.") (citations and quotation marks omitted).

Therefore, the Court concludes that the appropriate way to proceed at this juncture would be to notify the Bankruptcy Court of this action so that the Bankruptcy Court can determine whether to reopen the case.[1]

---

[1] Should the Bankruptcy Court choose to reopen the bankruptcy proceedings, there are several avenues available for administering the undisclosed claims:

- The Bankruptcy Court may authorize a creditors' committee to bring the claims on behalf of the debtor in possession. See In re A.P. Liquidating Co., 421 F. App'x 583, 587-588 (6th Cir. 2011); Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 563-567 (3d Cir. 2003) (analyzing Bankruptcy Code provisions

Based on this precedent, the Court concludes that Plaintiffs' standing turns on whether the Bankruptcy Court would reopen the bankruptcy proceedings and have the claims pursued by an entity such as a creditors' committee or an appointed trustee. The Court, therefore, concludes that Defendants have not shown, at this time, that Plaintiffs lack standing.[2]

---

that authorize bankruptcy courts to confer derivative standing to sue on creditors' committees).

- The Bankruptcy Court may appoint a bankruptcy trustee to bring the claims at issue. <u>See</u> 11 U.S.C. § 1104 (authorizing the bankruptcy court to appoint a trustee for cause, include fraud or mismanagement, or if the appointment of a trustee would be in the interests of creditors); <u>Matter of Holly's, Inc.</u>, 140 B.R. 643, 685 (Bankr. W.D. Mich. 1992) ("The legislative history and case law indicate an appointment of a trustee is appropriate when the debtor in possession fails to adequately perform the duties of a trustee.").
- The creditors' committee may move the Bankruptcy Court to appoint an examiner with authority to sue under 11 U.S.C. § 1104(c). <u>See Cybergenics Corp.</u>, 330 F.3d at 577.
- Upon motion by an interested party, the Bankruptcy Court may also "order the debtor to file an avoidance action." <u>Cybergenics Corp.</u>, 330 F.3d at 578. "But this solution is not realistic – given management's sometimes severe conflicts of interest, a court order to file an avoidance action would frequently amount to instructing management to sue itself. To put it mildly, that is unlikely to result in vigorous prosecution of the claim." <u>Id.</u>

[2] The Court also concludes that Plaintiffs' argument on issue preclusion lacks merit. Plaintiffs contend that the standing issue is barred on the grounds of issue preclusion, based on an order issued by Judge Lawson in Case No. 09-13626, denying Defendants' motion to quash non-party subpoenas and permitting CSX to proceed with discovery against Defendants. (Dkt. 39 in 09-13626). Plaintiffs contend that Judge Lawson's order resolved the issue of standing because (i) as part of their motion to quash, Defendants raised the same standing arguments that they raised in their motion to dismiss before this Court, (ii) Judge Lawson's denial of the motion must have constituted a conclusion that Defendants' standing arguments lacked merit, (iii) the order resolved the dispute at issue, and (iv) Defendants had a full and fair opportunity to litigate the standing issue. Pl. Resp. at 12-13 (Dkt. 21).

To establish issue preclusion, Plaintiffs must show:

(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

10

### b.  Mootness and collateral attack

Defendants' argument that Plaintiffs' claims are moot lacks merit.  Defendants argue that

Plaintiffs may not bring fraudulent conveyance claims because Plaintiffs, as creditors of Hog

Brothers, may not receive the transferred funds directly from Defendants.  However, a creditor

may sue to compel a party to refund, to the debtor, allegedly unlawful distributions.  In <u>Florence</u>

<u>Cement Co. v. Vettraino</u>, 807 N.W.2d 917, 926 (Mich. Ct. App. 2011), the court stated:

> Under Mich. Comp. L. 450.4308, a member of a limited-liability company who
> assents to or receives a distribution in violation of Mich. Comp. L. 450.4307 is

---

<u>Pfeil v. State Street Bank and Trust Co.</u>, 671 F.3d 585, 601 (6th Cir. 2012) (citations omitted).
This test is not met.  As Plaintiffs concede, Judge Lawson's one-page order allowing CSX to
conduct post-judgment discovery was not a "final judgment on the merits." Thus issue preclusion
cannot be applied. <u>See, e.g.</u>, <u>Jaskolski v. Daniels</u>, No. 03-479, 2006 WL 2927593, at *5 n.2
(N.D. Ind. Oct. 12, 2006) ("Defendants ask that the doctrine of issue preclusion be applied to an
interlocutory discovery order.  There is no precedent for such an application."); <u>Ben Oehrleins &
Sons & Daughter, Inc. v. Hennepin County, Minn.</u>, 922 F.Supp. 1396, 1400 (D. Minn. 1996)
(<u>rev'd in part on other grounds by</u> <u>Ben Oerhleins & Sons & Daughter, Inc. v. Hennepin County,
Minn.</u>, 115 F.3d 1372 (8th Cir. 1997)) (concluding that the claims were not collaterally estopped
by a discovery order because "[c]ollateral estoppel requires . . . the existence of a valid, final
judgment . . . . a discovery order is not a final judgment.").
    Furthermore, Judge Lawson's ruling did not involve precisely the same issue that is
involved here.  It is true that in Defendants' motion to quash discovery, Defendants argued,
among other things, that Plaintiffs' discovery requests regarding transfers from Hog Brothers to
Defendants were irrelevant because "Plaintiff has no standing to file any new post-judgment
causes of action against Fort Iron, DeNardo, or Winter based on any alleged improper transfer of
Defendant's assets."  Def. Mot. to Quash at 15 (Dkt. 30 in 09-13626).  However, Judge
Lawson's one-page order addressed a discovery issue, in which the parameters of what is
discoverable are broader than the standards of strict relevance that would be applicable at a fact-
finding proceeding. <u>See</u> Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any
nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information
need not be admissible at the trial"); <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351
(1978) (noting that Rule 26(b)(1) "has been construed broadly to encompass any matter that
bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may
be in the case.").  Judge Lawson may have ruled that discovery should proceed because it might
lead to admissible evidence at a fact-finding proceeding pertaining to collection. By contrast, the
issue in our case is the narrower one of whether Plaintiffs actually have standing. Because Judge
Lawson may have made his ruling in this broader, more liberal context of discoverability, his
order cannot be deemed to be a decision on precisely the same issue present in our case.  Thus it
does not qualify for collateral estoppel purposes.  For these reasons, Defendant's standing
arguments are not barred by issue preclusion.

> "personally liable, jointly and severally, to the limited liability company for the
> amount of the distribution...." Mich. Comp. L. 450.4308 does not provide relief to
> the limited-liability company's creditor (here, Florence) directly. Therefore, on
> remand, the trial court should modify the judgment, in accordance with the
> statute, by ordering Shelby's members to refund the unlawful distributions to
> Shelby so that Shelby can satisfy its obligation to Florence.

Therefore, under Michigan law, Plaintiffs would have standing to compel Defendants to refund the allegedly unlawful distributions to Hog Brothers so that Hog Brothers can satisfy its alleged obligations to Plaintiffs. Furthermore, as discussed above, if the Bankruptcy Court reopens the bankruptcy proceeding, it may allow a creditors' committee to bring claims on behalf of Hog Brothers. For these reasons, Defendants' contention that Plaintiffs' claims are moot lacks merit.

Defendants also argue that Plaintiffs' claims constitute an impermissible collateral attack against a final order of the Bankruptcy Court – specifically, the Bankruptcy Court's order of the asset sale. In support of this argument, Defendants cite Travelers Indem. Co. v. Bailey, 557 U.S. 137, 153 (2009). In Bailey, the Supreme Court held that a party may not collaterally attack a final order of a bankruptcy court. Id. However, Plaintiffs are not seeking to resist the Bankruptcy Court's asset sale, because, as discussed above, the claims at issue here were never part of the asset sale.

For the reasons discussed above, the Court denies Defendants' motion to dismiss (Dkt. 18). The Court will notify the Bankruptcy Court of this action, and the Court stays further proceedings in this case for 60 days to await a decision by that Court regarding the reopening of bankruptcy proceedings.

### B. Defendants' Joint Motion for Summary Judgment (Dkt. 23)

Defendants also filed a motion for summary judgment (Dkt. 23) on the theory that Plaintiffs acknowledged that no debt was owed by Hog Brothers due to Plaintiffs' failure to

serve discovery in connection with the writs of garnishment they had served.  The Court rejects their theory and denies their summary judgment motion.

In their motion, Defendants allege that Plaintiffs filed writs of garnishment on Defendants in the proceedings before Judge Lawson and Judge Cleland.  Def. Mot. for Summ. J. at 1 (Dkt. 23).  Defendants allege that each of them responded to the writs of garnishment by filing garnishment disclosures denying any debt to Plaintiffs.  Id. at 1-2.  Defendants allege that Plaintiffs did not serve any discovery in response to the garnishment disclosures within 14 days of the disclosures, and thus the disclosures' denial of any debt must be taken as true under Michigan law.  See Mich. Ct. R. 3.101(M)(2) ("The facts stated in the disclosure must be accepted as true unless the plaintiff has served interrogatories or noticed a deposition within the time allowed by subrule (L)(1) . . . .").  Consequently, Defendants argue, the unlawful distribution and fraudulent conveyance claims – which necessarily depend on the existence of a debt – must be dismissed.

The Court disagrees.  As Plaintiffs point out in their response, they filed motions to extend time to serve discovery in response to the garnishment disclosures in the actions before Judge Lawson and Judge Cleland.  Pl. Resp. at 4 (Dkt. 25).  Both motions to extend time were granted.  See Dkt. 58 in Case No. 09-13626; Dkt. 31 in Case No. 09-11434.  At the motion hearing before this Court on Defendants' motion, the parties informed the Court that Plaintiffs had served the required discovery documents within the extended time periods established by Judge Lawson and Judge Cleland. The extension of time to serve discovery obviates the admission of "no debt" that Defendants urge this Court to declare.

The Sixth Circuit has analyzed a similar situation, and concluded that the district court has the discretion to extend discovery deadlines under such circumstances:

Huntington next argues that the district court improperly granted Apostolic's motion to extend the time for discovery, because Michigan's garnishment rule requires that the facts stated in a disclosure statement be taken as true if the plaintiff has not served interrogatories or noticed a deposition of the garnishee within fourteen days of the receipt of the statement.

The court extended discovery pursuant to Michigan Court Rule 3.101(T), entitled "Judicial Discretion," which states that "[o]n motion the court may by order extend the time for ... the plaintiff's filing of written interrogatories...." Huntington claims that this was improper, because Michigan Court Rule 3.101(M)(2) states that

> [t]he facts stated in the disclosure must be accepted as true unless the plaintiff has served interrogatories or noticed a deposition within the time allowed by subrule (L)(1) [fourteen days] or another party has filed a pleading or motion denying the accuracy of the disclosure.

Huntington argues that Rule 3.101(M)(2) is a mandatory rule that required the court to accept the facts in the disclosure as true. At first blush, a reading of the plain language of the rule seems to imply this result. However, Rule 3.101(T) allows the court to "extend the time for ... the plaintiff's filing of written interrogatories ...," which logically implies that the court has the discretion to extend the deadline in Rule 3.101(M)(2). In other words, although Rule 3.101(M)(2) may, in fact, be mandatory, the fourteen-day limit outlined in the rule can apparently be increased at the court's discretion under Rule 3.101(T). Although at some point in time the facts in the disclosure must be taken as true, the court appears to have the discretion to alter when, in fact, that point in time occurs.

We note that there is simply no prior Michigan court precedent that addresses how to navigate the "intersection" between Rules 3.101(M)(2) and 3.101(T). However, it seems both manifestly absurd and extremely unjust to require a plaintiff to object (via written interrogatories or the noticing of a deposition) to a patently false disclosure statement sent by a garnishee when the plaintiff would have no reason to believe that the disclosure was patently false. Rule 3.101(T) was likely enacted in order to give the court the discretion to deal with extreme situations, such as that presented in the instant case. Because the scope of discovery is a matter usually committed to the district court's sound discretion, see Theunissen v. Matthews, 935 F.2d 1454, 1465 (6th Cir.1991), we hold that the trial court's decision to extend discovery was not erroneous.

Apostolic Pentecostal Church v. Colbert, 169 F.3d 409, 415-416 (6th Cir. 1999).

Apostolic teaches that the district courts have the discretion to establish the time at which the facts in the garnishment disclosures must be accepted as true. Judge Lawson and Judge

14

Cleland exercised this discretion in granting Plaintiffs' motions for extensions of time, and Plaintiffs submitted responses to the garnishment disclosures within the extended timelines. This Court concludes that under the analysis in <u>Apostolic</u>, the facts as alleged by Defendants in the garnishment disclosures, therefore, need not be accepted as true.

The argument that the facts in the garnishment disclosures must be accepted as true was the only ground proposed by Defendants for granting summary judgment. Therefore, the Court denies Defendants' motion for summary judgment (Dkt. 23).

### III.    CONCLUSION

For the reasons stated above, the Court denies Defendants' motion to dismiss (Dkt. 18) and denies Defendants' motion for summary judgment (Dkt. 23). In addition, this Court will transmit a copy of this Opinion and Order to the United States Bankruptcy Court for the Eastern District of Michigan and stay further proceedings in this action for 60 days to await a decision by that Court whether to reopen bankruptcy proceedings relative to Hog Brothers.

SO ORDERED.

Dated:  March 25, 2013                        s/Mark A. Goldsmith
       Flint, Michigan                        MARK A. GOLDSMITH
                                          United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 25, 2013.

                                        s/Deborah J. Goltz
                                        DEBORAH J. GOLTZ
                                        Case Manager